IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GARY WEST,**
    **Petitioner,**

v.                                                             Civil Action No. 2:15-cv-10
                                                                    (Judge Bailey)

**CHARLES WILLIAMS,**
**Warden of FCI Gilmer,**
    **Respondent.**

## REPORT AND RECOMMENDATION

On February 2, 2015, the *pro se* petitioner, Gary West[1] ("Petitioner"), an inmate incarcerated at FCI Gilmer in Glennville, West Virginia, filed a Petition for Habeas Corpus pursuant to 28 U.S.C. 2241. ECF No. 1. On March 24, 2015, the undersigned ordered Respondent to show cause as to why the writ should not be granted. ECF No. 8. Respondent filed a "Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause" and memorandum in support on April 14, 2015. ECF Nos. 10, 11. On May 15, 2015, the undersigned issued notice pursuant to Roseboro v. Garrision, 528 F.2d 309 (4th Cir. 1975), informing Petitioner of his right to file material responsive to Respondent's motion to dismiss. ECF No. 12. Petitioner did not file a response.

### I.    FACTS

Petitioner is serving a 245-month sentence imposed by the Western District of Tennessee on October 10, 2005. ECF No. 1. His projected release date, with consideration for good conduct time, is April 19, 2026. ECF No. 11 at 1.

On July 2, 2014, Petitioner received an incident report for violating Code 297, Use of a Telephone for Abuses Other than Criminal Activity. Id. at 4. The incident report

---

[1]The Bureau of Prisons list Petitioner's first name as Garey. However, his criminal docket sheet from the Western District of Tennessee list his first name as Gary. See 2:06-cr-20123-BBD-1 available on PACER.

indicated that on that day, a Correctional Counselor was monitoring recorded inmate phone calls. Id. The counselor monitored a call made on June 14, 2014, by Petitioner to a particular phone number. Id. The counselor noted that Petitioner identified himself to an unknown female on the line, and then about twenty (20) seconds into the call, a voice other than Petitioner was heard. Id. The unknown female referred to the inmate caller by another name[2], different than Petitioner's, for the duration of the call. Id. at 5. A later search of the telephone number revealed that the number belonged to a sibling of another inmate, with the first name heard on the recording, at FCI Gilmer. Id.

Petitioner received a copy of the incident report on July 2, 2014. Id. The investigator, Lieutenant J. Hurd, Sr., advised Petitioner of his rights that same day. Id. Petitioner stated that he understood his rights, but made no comment to Lieutenant Hurd. Id. Lieutenant Hurd noted that Petitioner had an "appropriate demeanor." Id. Finally, Lieutenant Hurd found that, based on the evidence, Petitioner had been properly charged. Id.

A UDC hearing was held on July 10, 2014. Id. During the hearing, Petitioner made no comment. Id. The incident report was forwarded to the Disciplinary Hearing Officer ("DHO") for further proceedings. Id. The UDC recommended a loss of phone privileges and a loss of commissary for sixty (60) days. ECF No. 11-2 at 2.

On July 10, 2014, Petitioner was provided a form Notice of Discipline Hearing Before the DHO. ECF No. 11 at 5. Petitioner requested a staff representative, but did not have any particular representative in mind, so the form states "No name @ [sic] this time." ECF No. 11-2 at 8. Petitioner did not wish to call witnesses. Id. Further, Petitioner

---

[2] The inmate is identified by first name in the original report, but that name has been redacted from this report for privacy considerations.

2

was provided with a form advising him of his rights at the DHO hearing. ECF No. 11 at 5.

Petitioner's DHO hearing was conducted on July 31, 2014. Id. In regard to whether the incident report was true, Petitioner stated "[I]t is my bad – I was duped into making the call. He was a few seconds on the phone – I put the phone down to get a pen and he jumped on the phone." Id. at 6. He further said, "I thought he was going to introduce me to a young lady." Id.

Petitioner was without representative, and the DHO noted that Petitioner had waived his right to a staff representative. ECF No. 11-2, pp. 8, 12. The inmate who was heard on the call appeared as a witness and stated "that day I told him I was putting him on the phone to my mother. I did it just to get a call out of him – he told me not to touch the phone." Id. at 12.

DHO Debbie Lohr found that Petitioner committed the prohibited act of Code 297. Id. at 13. In so finding, she relied upon the written incident report and Petitioner's partial admission that the other inmate spoke on the telephone during Petitioner's call. Id. Further, she commented that, whether or not Petitioner's intent was for the inmate to speak on the call, the fact remained that Petitioner "allowed [his] PAC number to be Compromised, plain and simple." Id. at 14. The DHO found, based upon the "greater weight of the evidence," that Petitioner had violated Code 297, Use of Telephone for Abuses Other than Criminal Activities. Id.

The DHO imposed sanctions, including disallowance of twenty-seven (27) days of good conduct time and loss of phone privileges for six (6) months, with three (3) months suspended pending 180 days of clear conduct. Id. The sanctions were imposed

because "[t]he use of a telephone while incarcerated is a privilege, not a right." Id. She noted that circumventing the telephone monitoring procedures or abusing the telephone system in any way, would not be permitted. Id. The DHO stated that the BOP "has an obligation to the public at large, to ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting business or to threaten or harass members of the public." Id. The DHO explained that the sanctions were imposed to hold Petitioner accountable for his behavior and to deter him from engaging in similar behavior in the future. Id.

Petitioner was advised of his rights to appeal. Id. He was provided a copy of the DHO report on August 19, 2014. Id. Petitioner appealed the disciplinary action, fully exhausting his administrative remedies with the BOP. ECF No. 11-1 at 1:6.

## II. CONTENTIONS OF THE PARTIES

### A. Petitioner's § 2241 Motion

Petitioner raises the following grounds for relief: (1) "Violation of my procedural due process rights;" (2) "[m]isapplication of prohibited code act;" (3) "[n]o progressive discipline measures were use [sic] by the incident report writer, or the DHO hearing officer;" and (4) "[t]he DHO hearing officer used racial discrimination to come to her determination as to the amount of disallowance of good conduct credit time to take from this inmate." ECF No. 1 at 4-7.

As relief, Petitioner seeks to have his disciplinary charge reduced by changing the prohibited code act to the lesser charge. ECF No. 1 at 8. Further, Petitioner would like the disallowance of good time conduct reduced to the same "as the white inmate for the same severity charge [sic] which would be 14 days instead of 27." Id. Additionally,

Petitioner requests that "the courts" instruct "the BOP – specifically Gilmer Officials" to change his "central file" immediately. Id. Finally, Petitioner requests that "the courts [] reprimand Gilmer Officials" because they "knowingly violated this inmates [sic] procedural due process rights" and for "having allowed the DHO Hearing Officer to use discrimination as a factor . . . ." Id.

### B. Respondent's Memorandum

Respondent asserts that Petitioner's Motion under § 2241 should be dismissed for the following reasons: (1) Petitioner received due process and his rights pursuant to Wolff v. McDonnell, 418 U.S. 539 (1974); (2) Petitioner's right to have a staff representative was not violated; (3) Petitioner was charged properly with a violation of Code 297; (4) progressive discipline is not required by the BOP; and (5) Petitioner's claim of racial discrimination is without merit. ECF No. 11 at 7, 9, 10-13.

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

7

## IV. ANALYSIS

**A. Petitioner's claim that his procedural due process rights were violated should be dismissed because the <u>Wolff</u> requirements were satisfied, and the DHO's findings were supported by some evidence as required by <u>Hill</u>.**

As noted above, Petitioner claims that his procedural due rights were violated "when the DHO hearing officer FAILED to substantially comply with proper procedural regulations . . . ." ECF No. 1, p.4 Further, Petitioner asserts that he was denied assistance from a staff representative for the purpose of reviewing the evidence. (<u>Id.</u>).

The Supreme Court has held that when prison disciplinary proceedings potentially involve the loss of good time credits, the rights afforded to inmates include (1) written notice of violations at least twenty-four (24) hours before the hearing; (2) disclosure of evidence against the prisoner; (3) the right to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" (4) a neutral and detached hearing body; and (5) a written statement by the fact-finders as to evidence relied upon and reasons for disciplinary actions. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 559-66 (1974); <u>see</u> <u>also</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972); <u>Segarra v. McDade</u>, 706 F.2d 1301, 1304 (4th Cir. 1983). Furthermore, a decision to revoke good time credits must be supported by "some evidence" to comport with the requirements of due process. <u>Superintendent, Mass. Corr. Inst. V. Hill</u>, 472 U.S. 445, 454 (1985). Further, there is no general constitutional right for an inmate to have a staff representative in prison disciplinary proceedings. See <u>Hudson v. Hedgepeth</u>, 92 F.3d 748, 751 (8th Cir. 1996). Due process requires that an inmate be provided with a staff representative only "'[w]here an

illiterate inmates is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and preserve the evidence necessary for an adequate comprehension of the case.'" Id. (quoting Wolff, 418 U.S. at 570).

Here, Petitioner received a copy of the Incident Report on July 2, 2014. ECF No. 11, p. 4. The DHO hearing was not held until July 31, 2014. ECF No. 11 at 5. Accordingly, Petitioner received written notice of the charge more than twenty-four (24) hours before the hearing. The Incident Report also contained the evidence against Petitioner. ECF No. 11-2 at 2. During the DHO hearing, Petitioner was provided the opportunity to make a statement on his own behalf. Id. at 12. He admitted to the violation, stating that "[he] was duped into making the call." Id.

Next, nothing in the record suggests that DHO Lohr was not neutral and detached. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[3]

Furthermore, DHO Lohr issued a written report documenting the specific evidence she relied upon to find that Petitioner had committed a Code 297 violation. Id. at 13-14. Her report also contained the action taken and the reasons for such action. Id. at 14. The undersigned finds that the Wolff requirements were satisfied, and that the DHO's decision was supported by "some evidence" as required by Hill.

Further, nothing in the record suggests that Petitioner is illiterate or could not adequately comprehend the disciplinary proceedings against him. Petitioner appealed his DHO hearing [ECF No. 11-1. p.6] and drafted a Complaint in this matter. ECF No. 1.

---

[3] See 28 C.F.R. § 541.16(b)

9

Additionally, Petitioner does not claim to not understand the proceedings against him. His presentation of his claims demonstrates his literacy and comprehension.

Finally, Petitioner waived his right to assistance from a staff representative. Id. at 8, 12. Petitioner initially indicated that he wished to receive assistance from a staff representative; however, Petitioner's initials appear next to a correction on the form, indicating he waived the right to assistance. Id. at 8. Further, DHO Lohr noted during the hearing that Petitioner had waived his right to assistance from a staff representative and was ready to proceed. Id. at 12-13.

Thus, the undersigned finds that the Wolff requirements were satisfied, the DHO's decision was supported by "some evidence" as required by Hill, and Petitioner's rights to a staff representative were not violated. Accordingly, the undersigned recommends dismissing Petitioner's claim that his procedural due rights were violated.

**B. Petitioner's claim that he was charged under the wrong Code section and that he deserves a reduced sanction should be dismissed because evidence suggests he violated Code 297 and the sanctions were within the regulatory limits.**

Petitioner also asserts that the wrong Code violation was applied. ECF No. 1 p. 5. He believes he should have been charged with a violation of Code 397, not Code 297. Id. at 6. He requests that the prohibited act code be changed to Code 397, that the change be reflected "immediately" in his "central file," and that his disallowance of good time credit be reduced from twenty-seven (27) days to fourteen (14) days. Id. at 8.

Code 297 is for "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." ECF No. 11-2 p. 63. Code 397 is for "Use of the telephone for abuses other than illegal activity

which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act." Id. at 67. Sanctions available for a violation of Code 297 include: (1) a recommendation for parole date rescission or retardation; (2) forfeiture and/or withholding of "earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less," and/or termination or disallowance of extra good time; (3) disallowance of between 25% and 50% (14-27 days) of good conduct time credit available for the year; (4) up to six (6) months of disciplinary segregation; (5) monetary restitution; (6) a fine; (7) loss of privileges; (8) change of housing; (9) removal from program and/or group activity; (10) loss of job; (11) impounding of personal property; (12) confiscation of contraband; (13) restriction to quarters; and (14) extra duty. Id. at 64.

Here, the DHO noted in the written report that "[s]haring PAC numbers is strictly prohibited conduct as it circumvents telephone monitoring procedures." Id. at 13. Petitioner admitted to the conduct, though he stated, "I put the phone down to get a pen and he jumped on the phone." Id. at 12. However, the DHO was not convinced that Petitioner's actions were justified. Id. at 13. Specifically, DHO Lohr stated:

> While it could be true your intent was not to allow [the other inmate][4] to talk to your call recipient, the DHO is not totally convinced that is true. However, regardless, the fact remains you allowed another inmate to talk to your call recipient whether it was because you put the telephone down and he picked it up or you simply allowed him to use your telephone. The end result is the same; you allowed your PAC number to be compromised, plain and simple.

Id. at 14. The DHO further wrote that "[i]t is an important part of the institution's security that inmates be allowed to contact those persons authorized," and that the BOP had an

---
[4] Name redacted.

11

obligation to "ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting business or to threaten or harass members of the public." Id.

This Court has previously upheld a DHO's finding that a violation of Code 297 occurred for the same conduct at issue here. See Mehta v. O'Brien, No. 1:10-cv-200, 2011 WL 1790440, at *5 (N.D. W. Va. Mar. 29, 2011). At least one other court has held the same. Saeed v. Pugh, No. 4:14-cv-0871, 2014 WL 4966357, at *2 (N.D. Ohio Oct. 3, 2014) (upholding the application of the more severe sanction because the inmate's conduct, three-way calling, "circumvented the staff's ability to monitor his telephone use in violation of Offense Code 297"). Furthermore, this Court has previously considered a similar argument, in a case where an inmate asserted that he should have been charged under Code 397 for three-way calling, rather than Code 297. See Morris v. Fransic, No. 3:06-cv-26, 2007 WL 2327111, at *1 (N.D. W. Va. Aug. 10, 2007). United States District Judge John Preston Bailey found that "the Bureau of Prisons uniformly applied its discretion in classifying the petitioner's conduct as a violation of Code 297." (Id.) Judge Bailey noted that certain behaviors are covered by both Code 297 and Code 397, and, therefore, "the reporting officer exercises discretion in determining which code to assign to a given violation." Id.

Petitioner also appears to assert a claim that the sanctions imposed–particularly the disallowance of twenty-seven (27) days of good conduct time–were too extreme. However, this Court has previously found that a similar claim is without merit. See Valenteen v. Driver, No. 1:08-cv-89, 2009 WL 304835, at *3 (N.D. W. Va. Feb. 6, 2009). United States District Judge Irene M. Keeley noted that the BOP has "the

authority to discipline prisoners" pursuant to statute, and that the sanctions imposed on the petitioner fell "within the sanctions authorized . . . and this Court will not disturb the correct and orderly operation of the BOP." Id. Other courts have also found that an inmate is not entitled to relief on a claim that sanctions were too severe as long as the sanctions imposed were within the limits set in the BOP's disciplinary regulations. See Sanchez v. Martinez, No. 1:cv-09-01350, 2009 WL 3731752, at *4-5 (M.D. Pa. Nov. 6, 2009) (also noting that the forfeiture of good conduct time, disciplinary segregation, and loss of privileges "plainly fall 'within the expected perimeters of the sentence imposed by a court of law,' and do not '[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life'").

In sum, there is clearly "some evidence" to support the finding that Petitioner's conduct violated Code 297 because it circumvented telephone monitoring procedures; accordingly, Petitioner's argument that he was charged under the wrong Code section is without merit. Furthermore, the sanctions imposed upon Petitioner for his violation of Code 297 were within the parameters of the BOP's regulations concerning discipline. Accordingly, the undersigned finds that Petitioner's arguments are without merit and should be dismissed.

### C. Petitioner's claim that he be charged with a lesser Code violation because of "progressive discipline" should be dismissed because progressive discipline is not required by PS 5270.09.

Petitioner asserts that his violation of Code 297 was not a "repetitive infraction or violation" and that the proper charge should have been a violation of Code 397. ECF No. 1 at 6. He also states that he had not been charged with the same type of prohibited act in the eighteen (18) month period prior to the instant infraction. Id. Petitioner states

that neither the "incident report writer" nor the "DHO hearing officer [sic]" should have charged him with a violation of Code 297. Id.

The BOP's policy concerning inmate discipline is set forth in Program Statement ("PS") 5270.09, Inmate Discipline Program. ECF No. 11-2 p.16. The undersigned has failed to locate the word "progressive" in PS 5270.09. The policy does state that if an inmate commits repetitive prohibited acts, increased sanctions can be imposed. (Id. at 24). Therefore, repetitive prohibited acts may result in a change in the sanctions imposed, but not the Code section under which the violation is charged.

In her reasoning for the sanctions imposed, DHO Lohr wrote that "the Bureau of Prisons believes in and practices progressive discipline and future misconduct of this nature will undoubtedly result in harsher sanctions." ECF No. 11-2 p.14. However, the undersigned construes the DHO's mention of "progressive discipline" to refer to "harsher sanctions" in accord with PS 5270.09. In any event, the Government correctly notes that this is the third time Petitioner has been charged with prohibited conduct involving the telephone. (ECF No. 11 at 13). In 1999, Petitioner violated Code 406, Using the Phone or Mail Without Authorization and received a loss of phone privileges for two (2) months. ECF No. 11-2 at 73. In 2000, Petitioner violated the same code, Code 406, and received a loss of phone privileges for six (6) months. Id. The third violation is the instant charge. Id. p. 72. Therefore, even though "progressive discipline" is not required by PS 5270.09, it would certainly be warranted based upon Petitioner's disciplinary history.

Accordingly, the undersigned finds that Petitioner's claim that he be subject to a lesser charge because of "progressive discipline" is without merit. Thus, the undersigned recommends dismissing the claim.

**D. Petitioner's claim that the DHO used racial discrimination to impose the punishment should be dismissed because Petitioner cannot demonstrate that he has been treated differently than other similarly situated and that the treatment was the result of intentional and purposeful discrimination.**

Finally, Petitioner asserts that DHO Lohr used racial discrimination to determine "the amount of good conduct credit time to take from this inmate." ECF No. 1 p. 6. Petitioner stated that DHO Lohr "punish[ed] [him] and other African American inmates with 'twice' the amount of Good Conduct Time Loss or Disallowance than White Inmates . . . ." Id. at 7. Further, Petitioner asserts that DHO Lohr "DID [sic] only disallow 14 days of Good Conduct Time loss for a white inmate who was charged and found guilty of a 200 series rule violation." Id.

To establish an equal protection violation, a petitioner must first "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If the petitioner makes such a showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. "Merely claiming that other prisoners received less severe punishment for the same violation . . . does not create an equal protection claim." Wooten v. Hogsten, No. 6:11-cv-00190, 2012 WL 1598080, at *6 (E.D. Ky. May 7, 2012); see also Ryan v. Scism, 474 F. App'x 49, 52 (3rd Cir. 2012) (dismissing petitioner's equal protection claim where he alleged that two other inmates received a lesser sanction for the same prohibited act, but failed to show that those inmates were

15

similarly situated to him). "Any number of reasons may exist to explain why the other inmate received no punishment at his DHO hearing; he may well have not been guilty of the same offense." Middleton v. Zych, No. 7:12-cv-00266, at *2 (W.D. Va. Oct. 4, 2012).

Here, Petitioner has merely claimed that other prisoners received less severe punishments for the same violation. He does not use any specific examples; rather, he claims that "*a* white inmate" who was found guilty of "*a* 200 series rule violation" received a lesser punishment than him. (ECF No. 1 at 7) (emphasis added). Petitioner's general statements and assertions do not establish an equal protection violation because he has not shown how he is similarly situated to others, and he has not shown that this vaguely described unequal treatment was the result of intentional or purposeful discrimination. Furthermore, "[b]ecause the punishment handed down in any case of prisoner misconduct is determined on the basis of the facts of the particular case, the equal protection clause cannot require exact uniformity in degrees of punishment." Rhodes v. Robinson, 612 F.2d 766, 775 (3rd Cir. 1979). Accordingly, Petitioner's claims that his equal protection rights were violated and that the DHO discriminated based upon race are unsupported and should be dismissed.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's motion to dismiss [ECF No. 11] be **GRANTED** and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections

identifying the portions of the Report and Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED: 7-28-2015

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE